**STATE of Missouri, Respondent,**

v.

**Billy Joe TYLER, Appellant.**

**No. 53682.**

Supreme Court of Missouri,
En Banc.

April 14, 1969.

Rehearing Denied May 12, 1969.

Norman H. Anderson, Atty. Gen., L. Michael Lorch, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel J. Sullivan, James W. Herron, St. Louis, for appellant.

HOLMAN, Chief Justice.

On March 15, 1965, with his employed counsel present, Billy Joe Tyler pleaded guilty to four separate offenses as follows: (1) robbery first degree by means of a dangerous and deadly weapon (Case No. 1843–M); (2) assault with intent to kill with malice, and two prior convictions of a felony (Case No. 1019–M); (3) assault with intent to kill with malice (Case No. 1842–M); and (4) carrying a concealed weapon (Case No. 1844–M). He was sentenced to

twenty years' imprisonment on each of the first three charges, and to two years' imprisonment on the fourth charge, all to run concurrently. He has filed a motion pursuant to S.Ct. Rules 27.25 and 27.26, V.A. M.R., to withdraw the plea of guilty and set aside the judgment as to each charge, but on this appeal he has abandoned the motion as to Case No. 1844–M (carrying a concealed weapon) because, as he states in his brief, he has "completed that sentence." The trial court held an evidentiary hearing and subsequently overruled the motion. Tyler has duly appealed.

This appeal was originally heard in Division II and the case was subsequently transferred to Court en Banc. Portions of an opinion prepared in Division (which was not adopted) are included herein without the use of quotation marks.

Defendant alleged in his motion that he was "coerced into entering a guilty plea" as to each offense because his trial counsel was not prepared to go to trial on three of the four charges, but the trial judge refused to grant a continuance and ordered immediate trial of all four cases. He further alleged that the trial judge stated to defendant that if he stood trial and was found guilty he would be sentenced to fifty years in prison and that, "faced with the prospect of attempting to establish his innocence in a trial for which his counsel was unprepared, and faced with the prospect of a fifty-year sentence if he did not succeed," he entered the pleas of guilty.

Immediately prior to the entry of the pleas of guilty a conference between the judge, the assistant circuit attorney, defense counsel, and the defendant was held in the judge's chambers. No record was made of that conference or of the proceeding in the courtroom at the time the pleas of guilty were entered by defendant and accepted by the court, or if there was such a record it was not offered in evidence by either the defendant or by the state. Therefore, there is no record before us, made at the time the pleas of guilty were entered, which purports to show that before accepting the pleas of guilty the court determined that they were made voluntarily with understanding of the nature of the charges. See S.Ct. Rule 25.04, V.A.M.R.; State v. Blaylock, Mo., 394 S.W.2d 364; State v. Arnold, Mo., 419 S.W.2d 59. However, as stated in State v. Mountjoy, Mo., 420 S.W.2d 316, 323, "a subsequent disclosure that the record does not demonstrate a substantial compliance with Rule 25.04 at the time the plea was accepted does not necessarily require, upon application by defendant, that the plea of guilty be set aside." It was pointed out that by reason of S.Ct. Rule 27.25 a defendant may not withdraw his plea of guilty as a matter of right, State v. Skaggs, Mo., 248 S.W.2d 635, but the procedure is appropriate after sentence only to correct manifest injustice. State v. Parker, Mo., 413 S.W.2d 489. It was further held in the Mountjoy case that in a hearing on a motion to withdraw a plea of guilty after sentence the defendant has the burden to prove by a preponderance of the evidence the facts alleged in his motion which demonstrate that manifest injustice resulted from the acceptance of his plea of guilty.

At the hearing on the motion Clement Kieffer, the attorney for Tyler on the date his cases were disposed of, testified that on March 15, 1965, he was prepared to try the assault case, No. 1019–M; that this was the only case in which he had actually been employed and that he understood that Hale Brown had been employed to try the other three cases; that he sought a continuance in Division One but his request was denied and all four cases were assigned for trial in the Division over which Judge Nangle presided; that he was not prepared for trial in three of the cases; that Judge Nangle also denied a request for a continuance; that he then had a conference with Judge Nangle as to what sentence Tyler would receive if he entered a plea of guilty and was told that the sentence would be 20 years' imprisonment; that he then called the defendant into the judge's chambers and the judge stated that

defendant would receive 20 years if he entered a plea of guilty, but that he would sentence him to 50 years if he were tried and found guilty; that he had a conference with his client and recommended that he not plead guilty but Tyler stated that he was "afraid to turn it down—50 years was too long." Mr. Kieffer also testified that he explained to defendant that it looked like he was going to be forced to trial in one of the three cases in which he was unprepared.

On cross-examination of Mr. Kieffer it was brought out that he had entered his appearance in the three "new cases" more than two months before the date in question and that Mr. Brown had never entered his appearance as an attorney in those cases.

Defendant testified that he was taken into the judge's chambers and that his attorney, Judge Nangle, the prosecutor, and the sheriff were there; that the judge said that "if I did not take the 20-year sentence I would get 50 years on each charge," which he understood to mean a total of 150 years on three of the charges with two years for carrying a concealed weapon; that he understood that Mr. Kieffer was to defend him in the assault case only, and that he had been told that Mr. Brown was to defend him in the other three cases; that he had never conferred with Mr. Brown. When asked his reaction to this conference he stated: "I didn't want to go to trial on all four charges and not have nobody to defend me that would know what they was doing, because Mr. Kieffer didn't know nothing about the other three charges, so I wouldn't have a chance. I didn't have nothing going for me, so, I was talked into taking the 20 years * * *."

The testimony of defendant's mother tended to support the testimony of defendant and Mr. Kieffer, although there was some evidence to indicate that she was never in the judge's chambers.

The Clerk of the Division testified that Case No. 1843–M had been sent to the Division for trial on March 15, 1965, and that after a discussion in the judge's chambers the court had sent him for the other three cases. He testified that the record indicated that all four cases had not been sent out for trial.

Michael O'Keefe, an assistant circuit attorney who had been assigned to handle the cases against Tyler, testified that he had discussed these cases with Mr. Kieffer prior to the trial date, and had told him the State would recommend life imprisonment on the three cases in which that sentence was authorized and the maximum on the concealed weapon charge, the sentences to run concurrently; that on March 15 he was in Judge Nangle's chambers during the conferences relating to the Tyler cases; that he was asked what the State's recommendation would be and he stated that it was life imprisonment; that the court stated that if Tyler pleaded guilty he would be given 20 years; that Tyler and his attorney left, the Clerk went over and got the other cases, and defendant was then brought into the courtroom and pleaded guilty. This witness also testified that he did not remember hearing the words "fifty years" spoken in the judge's chambers.

The judge who presided at the hearing on the motion to withdraw the pleas of guilty was the judge who accepted defendant's pleas of guilty. The judge did not testify at the hearing on the motion but made several comments pertaining to what he said to defendant and his counsel, which in substance tended to disagree with the testimony on behalf of defendant, or at least indicated that the judge's recollection as to what was said and what occurred at the conference in his chambers was different from that indicated by defendant's evidence. While the judge did not make a complete or explicit statement as to what was said by him in his chambers, defendant's counsel at the time of oral argument stated that he was willing to accept the fact that the judge would state that he did not say he would give the defendant a 50-year sentence if he was convicted upon a trial.

The findings of the trial court were contrary to the contentions of the movant. After reciting the facts the court concluded "that the pleas were voluntarily entered with full knowledge of the consequences, that the defendant was adequately represented by counsel at the time of his pleas; that the defendant, Billy Joe Tyler, was not misled or induced to plead guilty to these charges by fraud, mistake, duress, coercion, misapprehension, fear, persuasion, or lack of able counsel."

While we do not approve of some of the procedures that were followed in the cases, we have nevertheless concluded that we should affirm the judgment. This for the reason that we do not think the defendant has carried the burden of establishing his grounds for relief by a preponderance of the evidence, and we are unable to conclude that the findings of the trial court were clearly erroneous. S.Ct. Rule 27.26(f), (j).

We agree with the suggestion of defendant's counsel that a judge should not ordinarily participate in plea discussions. Those discussions should usually be limited to the attorney for defendant and the prosecuting attorney. An undesirable result of the court engaging in plea discussions is illustrated in State v. Edmondson, Mo., 438 S.W.2d 237. We recognize that occasional situations may arise where it is considered necessary for the attorneys to discuss the matter with the judge. However, in those instances the defendant should never be present. This because of the ever-present danger that he may not understand the legal discussion and may be misled thereby, and may also. erroneously conclude that he could not obtain a fair trial in the event he should later go to trial before that judge. In the case at bar we do not think the presence. of the defendant during a part of the discussion would require that the judgments be set aside as it is apparent that he fully understood the situation and knew the sentence he would receive in the event he entered pleas of guilty.

In connection with the matters discussed in the preceding paragraph, we approve the following quotation from American Bar Association's "Standards Relating to Pleas of Guilty" (approved by the House of Delegates in February 1968):

"3.3 Responsibilities of the trial judge.

(a) The trial judge should not participate in plea discussions.

(b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty * * * in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. If the trial judge concurs, but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty * *."

Defendant also suggests that where the judge has engaged in plea discussions he will find it difficult to objectively consider a post-conviction motion for relief based on statements he may have made during those discussions. Inferentially, this contention would seem to be that a motion of this nature should not be heard by the judge who sentenced the defendant. We do not agree that such is necessarily true. No doubt there are instances where a trial judge whose conduct has been criticized will feel that he should, of his own initiative, disqualify himself from hearing the post-conviction motion. Moreover, if either the defendant or prosecuting attorney is of the opinion that he cannot have

a fair trial of such a motion before the sentencing judge said judge may be disqualified under the provisions of the applicable rule. See Civil Rule 51.06. In the event of disqualification, if either party desires to offer the judge as a witness at the hearing of the post-conviction motion, he should be sworn and examined in the same manner as other witnesses.

■■■ We do not, however, consider that it was error for Judge Nangle to hear the motion in this case. Rule 27.26(a) specifically provides that the motion shall be filed in the court where the sentence was imposed. That provision was adopted because of the many advantages resulting from such procedure. Those are outlined in a discussion of the similar federal rule, as follows:

" 'No doubt the prime purpose of § 2255 was to provide a method whereby the validity of a sentence would be determined by the court which imposed the sentence rather than by a court in the district where the defendant was confined. The desirability of such procedure is apparent. The sentencing court is familiar with the case. The court in the district of confinement is unfamiliar with cases in which sentences have been imposed by other courts. The production of files, records, and witnesses is more convenient in the sentencing court. The court which heard the case and gave judgment thereon should have the opportunity and responsibility of hearing and determining attacks against the judgment.' " Wrone v. United States, 10th Cir., 367 F.2d 169, 170.

And, we see no objection to the judge considering those relevant facts of which he has a clear recollection. Scherk v. United States, D.C., 242 F.Supp. 445 [10]; Mirra v. United States, D.C., 255 F.Supp. 570 [20]. He, of course, should not be sworn as a witness in a proceeding being tried before him. However, we consider that orderly procedure would require that at an appropriate time on the hearing of the motion the judge should state to the parties and thus dictate into the record all of the facts of which he has a clear recollection which he will consider in deciding the motion. In that manner the parties and the appellate court, in the event of an appeal, will have definite knowledge concerning the facts considered by the judge. Thereafter, either party should be afforded the opportunity of offering evidence which might tend to contradict the facts stated by the judge.

Upon the factual merits defendant contends that the court erred in holding that he did not prove grounds for setting aside his pleas of guilty and vacating the sentences. As heretofore indicated, we rule this point against defendant. There is no question but that defendant intended to enter pleas of guilty and that he knew exactly what his punishment would be before he did so. His complaint is that his pleas were induced by fear because (1) the judge had said that if he went to trial and was found guilty he would sentence him to 50 years, and (2) his attorney was unprepared in three of the cases.

We think the evidence was sufficient to support the finding of the judge that the statement attributed to him was not made. Obviously that was his recollection. Moreover, the assistant circuit attorney testified that he did not remember any such statement. Furthermore, we think it doubtful that the statement was made when we consider that the first case scheduled for trial did not involve the Habitual Criminal Act and the court was not authorized to fix the punishment. Defendant also contends that even if the statement was not in fact made, the court should have set aside the judgments because the defendant thought it had been made. A short answer to that contention is that if the court had found that the statement was not made it would not likely have believed defendant's testimony that he thought it had been made.

In regard to the alleged fact that defendant's attorney was not prepared and was not actually representing defendant in

the case set for trial first, we have already pointed out that Mr. Kieffer had entered his appearance in the case more than two months before March 15, 1965. It also does not appear that a written application for continuance was filed. There was some testimony that a Mr. Brown was representing defendant in three of the cases. It was agreed, at the conclusion of the testimony, that Mr. Brown would be asked to submit an affidavit to the court stating his knowledge of the facts. He did not file an affidavit but wrote a letter stating such knowledge which is in the transcript that was approved by the parties. In that letter Mr. Brown stated that he had not been retained to represent defendant and had no recollection of having talked with anyone about the cases. We have concluded that the evidence was sufficient to support a finding adverse to the defendant on that point.

The judgment is affirmed.

All concur.