UNITED STATES, Appellee,

v.

Michael L. DAVENPORT, Airman Recruit, U.S. Naval Reserve, Appellant.

No. 40,318.

NCM No. 80–1356.

U.S. Court of Military Appeals.

Aug. 22, 1983.

For Appellant: *Lieutenant Thomas P. Murphy,* JAGC, USNR (argued); *Lieutenant Commander Patrick A. Fayle,* JAGC, USN, *Lieutenant Commander David S. Durbin,* JAGC, USNR, *Lieutenant Lynn M. Maynard,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Sandra R. Ganus,* JAGC, USNR (argued); *Captain T.C. Watson, Jr.,* JAGC, USN, *Commander W.J. Hughes,* JAGC, USN, *Lieutenant William C. Martucci,* JAGC, USNR (on brief).

*Opinion of the Court*

PER CURIAM:

At his special court-martial consisting of a military judge alone, appellant, contrary to his pleas, was found guilty of disrespect to a superior commissioned officer, willful disobedience of an order by the same officer, two assaults, and an unauthorized absence, in violation of Articles 89, 90, 128, and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 889, 890, 928, and 886, respectively. The sentence adjudged was a bad-conduct discharge, confinement at hard labor for 75 days, and forfeiture of $150.00 pay per month for 3 months. Both the convening authority and the supervisory authority approved the findings and sentence. In turn, the Court of Military Review affirmed.

Our Court granted review of this issue which had been assigned by appellant:

WHETHER THE U.S. NAVY COURT OF MILITARY REVIEW ERRED BY NOT DECIDING THAT THE MILITARY JUDGE PREJUDICIALLY ERRED IN DENYING THE DEFENSE MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL?

After final briefs had been filed on this issue, we heard oral argument; but, because of disagreement between counsel as to certain factual questions which arose during oral argument, we adjourned the hearing. When later it appeared that counsel could not stipulate as to certain facts about which judges of this Court had inquired during the oral argument, we ordered that a limited hearing be conducted by a military judge.[1] *See United States v. Vietor,* 10 M.J. 69 (C.M.A.1980); *United States v. Killebrew,* 9 M.J. 154 (C.M.A. 1980); *United States v. DuBay,* 17 U.S.C. M.A. 147, 37 C.M.R. 411 (1967). We directed the judge to determine at that hearing "whether appellant was denied full pay and allowance prior to the date of his conviction by special court-martial and whether the charges on which appellant was tried were referred to a court-martial because the convening authority had been advised that expiration of enlistment precluded non-judicial punishment." Ultimately, the *DuBay* hearing took place before Judge LaBella; and, pursuant to our order, the record of that hearing and his opinion containing findings of fact and conclusions of law were filed with our Court. Thereafter, supplemental briefs were filed by the parties.

I

■ Since Davenport was not in pretrial confinement, he does not receive the benefit of the 90-day presumption established by *United States v. Burton,* 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971). However, he insists that the Government's long delay in referring the charges and commencing trial was unreasonable and prejudiced him, so that he was entitled to dismissal of the charges. Central to his argument is the fact that, with the exception of a 1-day unauthorized absence, all of the offenses for which he was tried had been committed long before the date of expiration of his active-service obligation (EAOS), but the charges were not referred for trial by the convening authority until August 22, 1979, and the trial did not begin until September 4, 1979. According to Davenport, the harm he would otherwise have suffered for the Government's delay was increased in two ways.

First, he contends that, after his EAOS date on May 28, 1979, he was retained on active service in a non-pay status—a condition which he would analogize to the taking of property without due process and involuntary servitude. *Cf.* U.S. Const. amends. V and XIII. In this connection he calls our attention to the observation by the Court of Military Review that "[e]xacerbating appellant's situation is the impact of DODPAYMAN § 10316*b*, which denies pay and allowances to a member, not confined, held beyond EAOS to face trial." Unpublished opinion at 3.

Secondly, Davenport maintains that, because of the government delay, he was subjected to court-martial when otherwise he might have been nonjudicially punished under Article 15. In this regard, appellant points out that initially the captain of his ship had recommended trial by general court-martial but after Article 32 proceedings had been undertaken, the officer exercising general court-martial jurisdiction had "declined to refer the charges to" that forum. According to the court below, "In mid-August 1979, the convening authority was disposed to resolve the matters at Article 15, UCMJ, proceedings, Defense Exhibit A, but was advised that paragraph 11*c*, MCM, contemplates post-EAOS disciplinary action at only the court-martial level." *Id.* at 2.

In sum, Davenport's position is that, even if otherwise he would not have been prejudiced by the Government's long delay in getting to trial, he suffered severe injury under the unique circumstances of this case, since he was held on duty for about 100 days without pay and allowances and since he was tried by court-martial rather than nonjudicially punished because his commander had been informed that, after appellant's EAOS date, the only available op-

---

1. *United States v. Davenport,* 13 M.J. 18 (C.M.A.1982) (Fletcher, J., not participating).

tions were trial by court-martial or outright dismissal of the charges.[2]

Unfortunately for appellant, the findings of Judge LaBella at the *DuBay* hearing have eliminated the factual premises for his argument. With respect to pay the judge determined "that for the period from 1 May 1979 to 17 December 1979 the accused was entitled to receive $2,321.10, and actually received $2,034.00." [3] The shortfall in Davenport's pay is not of a magnitude to warrant consideration in determining whether he was prejudiced in any way by the delay in trial of his case.

Judge LaBella also found that the referral of appellant's case to trial by special court-martial did not result from advice to the convening authority "that the expiration of AR Davenport's enlistment precluded nonjudicial punishment." Instead, "the convening authority"—the captain of the vessel on which appellant was serving—"intended that the case be referred to trial by court-martial at all times subsequent to his ordering the Article 32 investigation." Although trial counsel had concurred with a defense request that the case be dealt with nonjudicially and there had been discussions between the legal officer and the executive officer of appellant's ship as to the imposition of nonjudicial punishment, the captain—who alone could "either impose nonjudicial punishment or refer a case to trial" —" 'flatly rejected' nonjudicial punishment." Moreover, his "decision to refer the case to trial by special court-martial had nothing to do with considerations of AR

Davenport's active obligated service expiration date."

Since the military judge's findings have eliminated the basis for any argument that appellant was prejudiced by loss of pay after his EAOS date or might have been awarded only nonjudicial punishment, we must inquire whether, even so, appellant is entitled to dismissal of the charges on some other basis. In this connection we note that some of the delay in referring the charges resulted from Davenport's own actions. According to the Court of Military Review,

> [a]ppellant had some 17 unauthorized absence offenses, one or more occurring each consecutive day from 2 through 16 October, so that orderly administration of his case was understandably difficult to manage. Furthermore, he was absent without authority for over one month (11 December 1978—16 January 1979) while awaiting Article 32 proceedings.

Also some delay apparently was occasioned by the circumstance that "numerous witnesses . . . were scheduled to sail from the Norfolk area to the Mediterranean Sea in April 1979." Unpublished opinion at 2.

In light of these facts and in the absence of any pretrial confinement, we are convinced that the delay in referring appellant's case for trial did not prejudice Davenport's right to a speedy trial.

Accordingly, the decision of the United States Navy Court of Military Review is affirmed.

---

2. At least insofar as the Manual for Courts-Martial, United States, 1969 (Revised edition), is concerned, we doubt that authority exists to extend an enlistment or period of obligated service in order to impose nonjudicial punishment. However, this is not the same as stating that, after a servicemember's obligated service has been extended with a view to trial by court-martial, the convening authority is precluded from determining that nonjudicial punishment should be awarded for offenses.

3. Judge LaBella's task was rendered more difficult, because in connection with certain ambiguous entries concerning Davenport's pay, there was "minimal to no cooperation from the Navy Finance Center despite repeated entreaties by trial counsel."